JS-6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit association,<br><br>    Plaintiff,<br><br>  v.<br><br>FS – PRECISION TECH. CO., LLC, a California limited liability company,<br><br><br>    Defendant. | Case No.:  2:23-cv-08353-SPG-MAR<br><br>**CONSENT DECREE** |

## <u>CONSENT DECREE</u>

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, Defendant FS – PRECISION TECH. CO., LLC, a California limited liability company ("Defendant") owns and operates a facility at 3025 E. Victoria St., Compton, California 90221, under Waste Discharger Identification number 4 19I019377 ("Facility");

**WHEREAS**, the Facility's industrial activities consist of manufacturing, marketing and distribution of precision titanium castings. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3369, covering nonferrous foundries;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the Facility discharges pollutants into waters of the United States and is regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must

be included and timely updated in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS**, on July 26, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ incorporating: 1) Federal Sufficiently Sensitive Test Method Ruling; 2) Total Maximum Daily Load Implementation Requirements; and 3) Statewide Compliance Options Incentivizing On-Site or Regional Storm Water Capture and Use, at the Facility;

**WHEREAS**, on October 4, 2023, LA Waterkeeper filed a complaint against Defendant in the Central District of California, Civil Case No. 2:23−cv−08353−SPG−MAR ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, including Compton Creek, the Los Angeles River, the Los Angeles River Estuary, Queensway Bay, and San Pedro Bay ("Receiving Waters");

**WHEREAS**, the lease at the Facility expires on December 31, 2024 and will not be renewed, and Defendant will file a Notice of Termination with the Regional Board for the current Facility;

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in

the 60-Day Notice and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term of this Consent Decree.

**I.     OBJECTIVES**

6.     It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.     In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the

General Permit, and all applicable sections of the CWA at the Facility.

## II.   AGENCY REVIEW AND CONSENT DECREE TERM

### A.   AGENCY REVIEW OF CONSENT DECREE

8.   <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies") for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event that the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

9.   <u>Court Notice</u>. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.   <u>Entry of Consent Decree</u>. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B.   DEFINITIONS

11.   Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

        a.   "BAT" means the Best Available Technology Economically Achievable.

b.   "BCT" means the Best Conventional Pollutant Control Technology.

c.   "BMPs" means Best Management Practices.

d.   "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.   "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.   "Discharge Point" means each outfall and discharge location designated in the then-current SWPPP for the Facility.

g.   "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

h.   "Entry Date" means the day this Consent Decree is approved and entered by the Court.

i.   "Forecasted Rain Event" means a rain event with a greater than fifty percent (50%) probability of occurrence as determined by the National Oceanic and Atmospheric Administration (http://forecast.weather.gov/) for "Coolidge Park, Long Beach, CA".[1]

j.   "MIP" means a Monitoring Implementation Plan.

k.   "PPT" means Pollution Prevention Team.

l.   "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in Section IX.A of the General Permit.

---

[1] Available at https://forecast.weather.gov/MapClick.php?lat=33.8722&lon=-118.1956.

CONSENT DECREE

m. "Qualifying Storm Event" or "QSE" shall have the definition set forth in Section XI.B of the General Permit.

n. "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

o. "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

p. "SWPPP" means a Storm Water Pollution Prevention Plan.

q. "Term" means the period between the Effective Date and the "Termination Date."

r. "Termination Date" means the latest of:

    i. Twenty (20) calendar days from Defendant providing notice to LA Waterkeeper of an approval from the Regional Water Quality Contral Board of a Notice of Termination for the Facility;

    ii. seven (7) calendar days from the conclusion of any proceeding or process to enforce the Consent Decree initiated prior to the date set forth above in Paragraph 11.r.i; and

    iii. seven (7) calendar days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

s. "Wet Season" means the seven-month period beginning October 1st of any given calendar year and ending April 30th of the following calendar year.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.   <u>Non-Storm Water Discharge Prohibition</u>: Any unauthorized non-storm water discharge, as defined in the General Permit, shall be a violation of this Consent Decree.

13.   <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current BMPs described in the Facility's SWPPP, Defendant shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit, including but not limited to those that achieve BAT/BCT. In addition, the General Permit Receiving Water Limitations require that discharges from the Facility "not cause or contribute to an exceedance of any applicable water quality standards" contained in a Statewide Water Quality Control Plan or the applicable Regional Board's Basin Plan. Defendant shall develop and implement BMPs necessary to comply with the General Permit requirement to achieve compliance with BAT/BCT standards, to comply with the applicable water quality standards, and to prevent or reduce contamination in storm water discharges from the Facility in compliance with this Consent Decree.

14.   <u>Rain Gauge/Sensor</u>: Defendant shall install and maintain an electronic rain gauge or sensor at the Facility. Installation to be completed on or before ten (10) days after the Effective Date. The rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1 inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities at the Facility and timing for purposes of this Consent Decree.

15.   <u>Structural and Non-Structural BMPs for the Facility</u>: Within forty-five (45) days of the Effective Date, Defendant shall develop and implement the following

BMPs at the Facility:

    a.    During the Wet Season, keep metal and trash waste receptacles, and debris bins, covered at all times when not in use to prevent the mobilization of pollutants in storm water;

    b.    Only perform wash-downs of Facility grounds or parking areas when all wash water runoff can be captured or diverted away from storm drains, adjacent grounds, and surfaces, such that wash waters and associated dirt, oils, and debris, do not foreseeably come into contact with storm water surface drainage and discharge from the Facility;

    c.    Maintain an up-to-date inventory of all hazardous and non-hazardous materials used on-site and ensure that hazardous and toxic materials used at the site are identified, quantified, and managed in compliance with federal, state, and local regulations;

    d.    Store all hazardous materials and wastes under cover and within secondary containment, and/or handle chemicals with appropriate precautions following the procedures outlined in the Facility's hazardous material management procedures. Where these terms conflict, Defendant shall defer to the terms of their hazardous material permits, and in so doing, Defendant will not have violated this Consent Decree;

    e.    Promptly clean all spills and leaks occurring outdoors or with the potential to migrate outdoors using dry techniques such as absorbents (e.g., rags, sweepings, kitty litter, etc.), sweeping, and/or shoveling;

    f.    Ensure curtains around the blasting area are maintained and closed at all operative times and inspect for aerial discharges daily, and make corrective actions as needed;

g.   When changing the bag house capture unit, Defendant will take steps to prevent escape of dust/debris as reasonably possible, and Defendant will maintain the bag houses in effective working condition.

h.   Place all inject wax waste trays under cover and elevated when possible to avoid contact with run off stormwater;

i.   Implement a daily hand sweeping program and employ a PM-10 compliant street sweeper on all operative paved areas at the Facility every two weeks, and employ hand sweeping and/or vacuuming on the same schedule in areas a mechanical sweeper cannot access;

j.   At least twenty-four (24) hours prior to a Forecasted Rain Event, place two (2) rows of stormwater heavy metal filtration socks horizontally in the path of storm water flow as close to the Discharge Point as practical to encourage filtration through the socks. Alternatively, erect berms or flow control such that stormwater is directed through stormwater heavy metal filtration socks before leaving site. And, provide a diagram or photograph of how they will be placed;

k.   During the Wet Season, as necessary, replace the wattles/filters/socks when degraded or they appear ineffective;

l.   Conduct daily walk-through inspections throughout the Facility to verify the adequate implementation and maintenance of SWPPP procedures and control measures, to identify potential sources of offsite contributions of metals, and seek to eliminate those sources to reduce pollutants present in storm water discharges;

m.   At least twenty-four (24) hours prior to each Forecasted Rain Event, cover all industrial input/output materials, debris and scrap

10

CONSENT DECREE

bins, and trash cans with tarps as necessary to prevent exposure to rainfall for those stored outside and where roof protection is inadequate, or otherwise move them into a covered structure adequate to prevent exposure to rainfall;

n.   Institute a formal pre-rain protocol throughout the Wet Season to be implemented within twenty-four (24) hours prior to a Forecasted Rain Event, involving inspection of any filters and wattles deployed at the site, removal of any exposed waste material, and relocation of uncontained or uncovered debris bins and trash cans under cover; and

o.   As much as is reasonably possible, remove unnecessary equipment or waste items from the operative area of the Facility which might be exposed to rainwater during the Wet Season.

p.   Within seven (7) days of each of the above BMPs being implemented, Defendant shall confirm to LA Waterkeeper in writing that such BMP has been implemented as set forth above;

q.   Cease industrial operations and activities at the Facility; eliminate storm water exposure to industrial equipment and materials at the Facility by September 30, 2024; and file a Notice of Termination with the Regional Board within 30 days thereafter.

**B.   SAMPLING AT THE FACILITY**

16.   Defendant shall develop a monitoring program consistent with the General Permit. During the Term, Defendant shall collect samples of storm water discharge from each Discharge Point from at least four (4) Qualifying Storm Events, including, at minimum, the first two (2) Qualifying Storm Events during the first half of the Reporting Year and the first (2) two Qualifying Storm Events during the second half of the Reporting Year. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. Any failure

to collect samples as required by this Consent Decree shall be documented, along with rain gauge/sensor data for the date when the sample should have been collected. Such documentation will be provided to LA Waterkeeper within five (5) days of a written request for such records by LA Waterkeeper.

17.    <u>Sampling Parameters</u>: All samples collected pursuant to this Consent Decree shall be analyzed, at minimum, for the parameters listed in Table 1. Should Defendant conduct sampling for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit for any reason, including without limitation as a result of changed operations or a revised pollutant source assessment, such parameter shall be treated as if listed in Table 1 for the purposes of this Consent Decree, including the action plan requirements below, and the Parties shall meet and confer regarding the applicable Table 1 limit for such purposes.

18.    <u>Laboratory and Holding Time</u>. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

19.    <u>Detection Limit</u>: Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

20.    <u>Reporting</u>: Defendant shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the General Permit, and shall provide copies to LA Waterkeeper as soon as practicable after receiving the laboratory report with the results.

**C.    REDUCTION OF POLLUTANTS IN DISCHARGES**

21.    Table 1 Numeric Limits: Defendant shall develop and implement BMPs to reduce pollutants in storm water at the Facility to levels below those in Table 1.

/ / /

**TABLE 1**

| Analytes | Values | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 400 mg/L<br>100 mg/L | Instantaneous NAL<br>Annual NAL |
| Oil & Grease (O&G) | 25 mg/L<br>15 mg/L | Instantaneous NAL<br>Annual NAL |
| Zinc | 0.159 mg/L | Numeric Effluent Limit |
| Copper | 0.06749 mg/L<br>0.0332 mg/L | Numeric Effluent Limit<br>Annual NAL |
| pH | 6-9 s.u. | Instantaneous NAL |

22.    Table 1 Exceedances. Under this Consent Decree, an "Exceedance" of Table 1 is defined as follows an exceedance occurs when either:

       a.   the average concentration for an analyte using the results of all the sampling and analytical results for the entire facility for the reporting year exceed the applicable Annual NAL listed in Table 1; or

       b.   two (2) or more analytical results from samples taken for any single parameter within a Reporting Year exceeds the applicable Instantaneous NAL or Numeric Effluent Limitation listed in Table 1.

23.    In light of the imminent closure of the Facility, Defendant and LA Waterkeeper will meet and confer regarding the appropriate steps to take for exceedances before the closure date (9/30/24). Both parties will negotiate in good faith regarding implementing additional BMPs or other corrective measures for exceedances.

24.    Action Plan for Table 1 Exceedances: If, and only if, the Facility remains operational beyond 10/1/2024, then the following provisions will govern Exceedances of Table 1. As of the Effective Date, and for the remainder of the Term, if Defendant has an unauthorized non-storm water discharge in violation of Paragraph 12, or storm water samples demonstrate an Exceedance as defined above, Defendant

shall meet and confer with LA Waterkeeper regarding a plan for reducing and/or eliminating the relevant discharge of pollutants for the Facility and/or achieving compliance with the non-storm water discharge prohibition ("Action Plan"). The complete Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the unauthorized non-storm water discharge or the receipt of the laboratory report demonstrating the Exceedance, as applicable.

    a.    <u>Action Plan Considerations</u>. Each Action Plan will consider at a minimum: (1) the identification of the contaminant(s) discharged in excess of the numeric limit(s) and/or the applicable unauthorized non-storm water discharge; (2) an assessment of the source of each contaminant exceedance and/or applicable unauthorized non-storm water discharge; (3) the identification of additional BMPs that could be implemented to achieve compliance with the numeric limit(s) and/or unauthorized non-storm water discharge prohibition, as well as the design plans and calculations of these additional BMPs; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no event later than ninety (90) days following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Settling Parties. Within seven (7) days of each of the BMPs set forth in the Action Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented as set forth in the Action Plan.

    b.    <u>Action Plan Proposed BMPs</u>: The following BMPs should generally be evaluated for inclusion in Action Plans to attain the Table 1 levels in the Facility's storm water discharges:

14

CONSENT DECREE

      i.     <u>Hydrologic Controls</u>: Installation of additional berms or equivalent structural controls necessary to reduce or prevent storm water from flowing off site other than through the engineered storm water conveyance system or storm water retention or treatment facilities.

      ii.     <u>Sweeping</u>: The increased/more frequent use of sweepers and manual sweeping in otherwise inaccessible areas.

      iii.     <u>Treatment Systems</u>: Installing additional components or systems, or otherwise improving, an advanced storm water treatment system, or making changes to the operation and maintenance protocols for such system, to provide more effective filtration treatment of storm water prior to discharge.

      iv.     <u>Evaluation of Existing BMPs</u>:  Replacing, rehabilitating, or eliminating existing BMPs, taking into account the age of the BMPs involved or employed, the engineering aspect of the application of various BMPs, and any adverse environmental impact of the BMPs.

    c.     <u>Action Plan Review</u>: LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's Action Plan to provide Defendant with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant to the dispute resolution provisions of this

Consent Decree, set out in Section IV below. Disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan.

 d. Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan, as set forth in Paragraph 28.b.i below.

 e. Action Plan Payments: Defendant shall pay Three Thousand Dollars ($3,500.00) each time an Action Plan is submitted to LA Waterkeeper at the same time that the Action Plan is submitted, but no more than once before the Facility's closure. Payments shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this Paragraph will constitute a breach of the Consent Decree.

### D. VISUAL OBSERVATIONS

25. Storm Water Discharge Observations: During the Term, appropriately trained staff of Defendant shall conduct visual observations during the Facility's operating hours during every rain event. Such inspections shall comply with all requirements of Section XI.A.2 of the General Permit, and any successor thereof.

26. Monthly Visual Observations: During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of Section XI.A.1 of the General Permit, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials

associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

27.    <u>Visual Observations Records</u>: Defendant shall maintain observation records, including representative photographs, to document compliance with the previous two Paragraphs. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof.  Defendant shall provide LA Waterkeeper with a copy of those records within seven (7) days of receipt of a written request from LA Waterkeeper for those records.

28.    <u>Employee Training Program</u>: Within thirty (30) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the General Permit and this Consent Decree ("Training Program"):

        a.    Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

        b.    <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are

17

CONSENT DECREE

fluent. If necessary, Defendant shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the General Permit;

c. Training shall be provided by a QISP familiar with the requirements of this Consent Decree and the General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP;

d. Sampling Training: Defendant shall designate an adequate number of employees necessary to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory;

e. Visual Observation Training: Defendant shall provide training on how and when to properly conduct visual observations to Designated Employees;

f. Non-Storm Water Discharge Training: Defendant shall train all Designated Employees at the Facility on the General Permit's prohibition of non-storm water discharges, so that Designated Employees know what non-storm water discharges are and how to detect and prevent non-storm water discharges;

g. Employees: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall participate in the Training Program within thirty (30) days of their hiring date; and

18

CONSENT DECREE

h.   Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within seven (7) days of receipt of a written request.

29.   <u>SWPPP Revisions</u>:

a.   <u>Initial SWPPP Revisions</u>: Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within thirty (30) days of the Effective Date for LA Waterkeeper's review and comment.  The complete, updated SWPPP shall contain the following elements:

i.   A revised pollutant source assessment, including all elements required by section X.G of the General Permit as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii.   A detailed narrative description of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by section X.G of the General Permit;

iii.   Descriptions of all BMPs in accordance with section X.H.4 of the General Permit, including without limitation BMPs required by this Consent Decree;

iv.   A set of site maps that comply with section X.E of the General Permit and provisions of this Consent Decree;

v.   A MIP as required by sections XI and X.I of the General Permit;

19

CONSENT DECREE

vi.    A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, e.g., visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.   A Training Program as described above in Paragraph 28.

b.    <u>Additional SWPPP Revisions</u>:

i.    Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.   Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

1.   The foregoing paragraph is not applicable when the Facility ceases operations.

c.    <u>Review of SWPPP</u>: For any SWPPP updates pursuant to Paragraphs 29.a and 29.b, LA Waterkeeper shall have thirty (30)

CONSENT DECREE

days upon receipt of Defendant's complete SWPPP to provide Defendant with comments. Within reasonable time of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the SWPPP to SMARTS.

### E. COMPLIANCE MONITORING AND REPORTING

30. Every year during the Term, LA Waterkeeper may conduct one annual site inspection ("Site Inspection") for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, one additional Site Inspection. Any Site Inspection shall occur during normal business hours, and LA Waterkeeper will provide Defendant with at least twenty-four (24) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff shall be entitled to adjust timing or reschedule during normal business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at Paragraph 58. During the Wet Weather inspection, Plaintiff may request that Defendant collect a

sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

31.     Document Provision. During the Term, Defendant shall notify and submit documents to LA Waterkeeper as follows:

a.     Defendant shall provide a copy to LA Waterkeeper of all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality;

b.     Within reasonable time of receipt by Defendant, send to LA Waterkeeper any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendant from the Regional Board, the State Board, and/or any state or local agency, county, municipality. Defendant shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

32.     Compliance Monitoring. Given the imminent closure of the Facility and LA Waterkeeper's anticipated reduced monitoring responsibilities, Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying Three Thousand Dollars ($3,000.00). Payment shall be made within thirty (30) days of the Entry Date, and within thirty (30) days after any additional Site Inspection, as applicable. The

payment shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST**

33.    <u>Environmental Mitigation Project</u>: To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the waterways tributary to the San Pedro Bay, Defendant agrees to make a payment totaling Fifteen Thousand Dollars ($15,000.00) to the Rose Foundation made within thirty (30) days of the Entry date, payable to the Rose Foundation for Communities and the Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

34.    <u>LA Waterkeeper's Fees and Costs</u>: Defendant agrees to pay a total of Fifty-seven Thousand Dollars ($57,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Aqua Terra Aeris Law Group and delivered by overnight carrier to 4030 Martin Luther King Jr. Way, Oakland, CA 94609. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

35.    In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Defendant shall pay a stipulated payment of Twenty-Five Dollars ($25) per day per

outstanding item. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

36.    <u>Interest on Late Payments</u>: Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 5% per year (0.416% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 33. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.    DISPUTE RESOLUTION

37.    This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

38.    <u>Meet and Confer</u>: Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in

24
CONSENT DECREE

writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

39.     Settlement Conference: If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 38, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

40.     In resolving any dispute arising from this Consent Decree before the Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. § 1365(d), and applicable case law interpreting such provisions, or as otherwise provided for by statute and/or case law.

**V.     MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

41.     Plaintiff's Waiver and Release of Defendant: In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendant, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were raised in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

42.     Defendant's Waiver and Release of Plaintiff: In consideration of the above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

43.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendant's compliance at the Facility with the General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI.   MISCELLANEOUS PROVISIONS

44.     <u>No Admission of Liability</u>: The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendant maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

45.     <u>Counterparts</u>: This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

46.     <u>Authority</u>: The undersigned representatives for Plaintiff and Defendant each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

47.     <u>Construction</u>: The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

/ / /

48.     <u>Full Settlement</u>: This Consent Decree constitutes a full and final settlement of this matter.

49.     <u>Integration Clause</u>: This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

50.     <u>Severability</u>: In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51.     <u>Choice of Law</u>: The laws of the United States shall govern this Consent Decree.

52.     <u>Diligence</u>: Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

53.     <u>Effect of Consent Decree</u>: Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

54.     <u>Negotiated Settlement</u>: The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

55.     <u>Modification of the Consent Decree</u>: This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

56.     Assignment: Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their successors and assigns. Defendant shall notify Plaintiff within ten (10) days of any assignment.

57.     Force Majeure: Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, pandemic, public health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this Paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

58.     Correspondence: All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

/ / /

/ / /

/ / /

28
CONSENT DECREE

| If to Plaintiff: | If to Defendant: |
|---|---|
| Los Angeles Waterkeeper<br>Barak Kamelgard<br>Benjamin Harris<br>360 E 2nd St., Suite 250<br>Los Angeles, CA 90012<br>Email: barak@lawaterkeeper.org<br>Email: ben@lawaterkeeper.org<br>Phone: (310) 394-6162 | FS-Precision Tech<br>3025 East Victoria St.<br>Rancho Dominguez, CA |
| With copies to:<br>Anthony M. Barnes<br>Email: amb@atalawgroup.com<br>4030 Martin Luther King Jr. Way<br>Oakland, CA 94609<br>917-371-8293 | With copies to:<br>Tyler Bowlin<br>Email: Tyler.Bowlin@millernash.com<br>340 Golden Shore<br>Suite 450<br>Long Beach, CA 90802 |

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

59. If for any reason the Federal Agencies should object to entry of this Consent Decree or to any portion of this Consent Decree or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the Federal Agencies or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

The Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

/ / /

CONSENT DECREE

**IT IS SO ORDERED.**

**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: April 16, 2024

_____
HONORABLE SHERILYN PEACE GARNETT
United States District Court Judge